Decided 16 July, 1900.

## LOMBARD v. WADE.

[61 Pac. 856.]

RECEIVERS—DISCHARGE— LACHES.

1. One of the defendants in a suit to foreclose a mortgage was injuriously affected by a decree which was entered on an erroneous mandate from the appellate court. She neglected, however, to apply to the supreme court for correction of the mandate for ten months after the receiver had been directed to distribute the rents and profits in his hands, and for eight months after confirmation of the sale under the decree. After the decree had been corrected, she applied for an order vacating the distribution of rents formerly made by the receiver and for a redistribution, and for an order directing the receiver to place her in possession. *Held,* that the motion was properly denied on the ground of her laches; the former order directing payment by the receiver having been acquiesced in by her for nearly a year, during which the receiver had distributed the funds in accordance with the order of the court, and another party had taken peaceable possession.

INFORMAL ORDER DISCHARGING RECEIVER.

2. Where an order was made in a foreclosure suit confirming the receiver's report, and directing him to make certain payments of the funds in his hands, taking vouchers therefor, and that on filing such vouchers he be discharged, and the receiver made such payments, except to one party, who refused to accept her share, and, with the acquiescence of all parties, ceased to collect rents from the premises or to exercise any control over them, such order, though informal, will operate as a discharge of the receiver.

NUNC PRO TUNC ORDER—POWER OF COURT.

3. A court cannot make an order that it ought to have previously made, or correct an improper or irregular order, and enter it *nunc pro tunc,* as of an earlier date.

From Umatilla : STEPHEN A. LOWELL, Judge.

This is a dispute between Letitia Lombard and C. B. Wade, who was receiver in the case of *Conklin* v. *La Dow,* reported in 33 Or. 354 (54 Pac. 218). The facts are fully stated in the opinion in that case.

For a proper understanding of the questions now before the court, it is only necessary to add that, after the termination of the proceedings in the probate court and the execution of the mortgage to the plaintiff's assignor, the defendant Mrs. Lombard purchased a portion of the mortgaged premises, known as "No. 301 Court Street, Pendleton, Oregon," from the successors in interest of Frank

E. La Dow and Charles B. Isaac, and was in possession thereof at the time of the commencement of the suit, and so remained until the tenth of February, 1897, when, upon the application of the plaintiff and over the objection of the defendants, C. B. Wade was appointed receiver of the mortgaged property. Thereafter the suit was tried upon the issues presented by the separate answers of Lewis Mc-Arthur La Dow and Mrs. Lombard, and a decree rendered declaring plaintiff's mortgage void as to the undivided half of the property inherited by the defendant Lewis Mc-Arthur La Dow. But, notwithstanding the fact that Mrs. Lombard claimed to have succeeded to the interest of Lewis McArthur La Dow in 301 Court Street by purchase, made presumedly on the faith of the regularity of the proceedings in the probate court, and that no issue was made or could have been made for trial between her and her codefendant as to the validity of her title, the court decreed that Lewis McArthur La Dow was the owner in fee of an undivided half of the mortgaged premises, which included, of course, the undivided half of 301 Court Street claimed by her. Upon appeal the decree of the court below was affirmed, except as to the part thereof decreeing Lewis McArthur La Dow to be such owner. By mistake, however, the entry of the decree of this court showed that the decree from which the appeal was taken was in all things affirmed, and, upon receipt of the mandate issued thereon, a decree of the circuit court was entered September 1, 1898, in accordance with its provisions, decreeing that Lewis McArthur La Dow was the owner in fee of an undivided half of the entire mortgaged property. On September 20, 1898, the final report of the receiver was examined and approved, and it was thereupon decreed that he pay to S. L. Conklin the sum of $532.70, to Lewis McArthur La Dow $296.90, and to Mrs. Lombard $61.09, and "that he take vouchers therefor, and that upon the

filing of such vouchers the said receiver be discharged without further order of this court.''

On November 5, 1898, the undivided half of the property described in the mortgage, formerly belonging to Frank E. La Dow, was sold under the decree of foreclosure to S. L. Conklin, and the sale was confirmed on the nineteenth of the month. Nothing further was done by Mrs. Lombard in the matter until the nineteenth of July, 1899, when she applied to this court for an order recalling the mandate, so that its decree might be made to conform to the opinion and actual decision of the court. This motion was allowed, and upon the return of the mandate the court on the second of January, 1900, made an order correcting the decree accordingly; and, a mandate issued on the amended decree having been filed in the court below on the sixteenth of the month, a decree was there entered in accordance therewith. On February 5 and 24 Mrs. Lombard filed motions in the court below to vacate the order of distribution of September 20, 1898, and for an order redistributing the net profits in the receiver's hands, and also for an order requiring him and the defendant Lewis McArthur La Dow to pay her all the rents and profits of the premises 301 Court Street up to the time of the sheriff's sale hereinbefore referred to, and of an undivided half thereof since such sale, less the proportion thereof due on the dower right of Mattie A. La Dow. Upon the hearing of these motions, after notice to all the parties, the court, on March 3, made the following order: ''It appearing to the court that the receiver has long since been, to all intents and purposes, discharged, and that such money as may be due to said Letitia Lombard is not in the hands of such receiver, except that portion allotted to her by the court, and which she refused to accept, to wit, $61.09, and it also appearing that, under the decision of the supreme court last handed

down, the court did err in said distribution order, it is hereby ordered that plaintiff S. L. Conklin and defendant Lewis McArthur La Dow, the parties overpaid in such distribution, do pay to said Letitia Lombard such sum as shall make such distribution equitable to the date of such distribution, to wit, said Conklin $46.71, and said La Dow $53.85, making total distributive portion going to said Letitia Lombard $161.65.  And it also appearing that said petition also asks that said Conklin and La Dow do account for rents and profits of the premises herein involved during such time as they have been in possession since said distribution, and that the court place said Lombard in possession of that portion of said premises claimed by her, and upon that prayer it appearing that the receiver, under order of this court, upon the first opinion of the supreme court herein, as it then understood the same, and upon entering judgment on the mandate, surrendered all of said property on the twentieth day of September, 1898, and has since had nothing to do with it in any manner whatsoever, and that at that time the said receiver distributed the funds in his hands according to the order of this court so far as he was able to do so, and was in all things discharged upon filing vouchers (which he was unable to do because of the refusal of said Letitia Lombard to accept and receipt for the proportion directed to be paid to her), and that, therefore, since said entry of judgment on the mandate, this court has had no possession of or jurisdiction over any part of said property, it is ordered that the petition asking accounting and possession be and the same is denied, and said Letitia Lombard directed to proceed in the usual manner for an accounting between joint tenants.''

On the twentieth of March Mrs. Lombard served a notice of appeal from the order of March 3, 1900, upon the attorney for plaintiff, and on the twenty-fourth of

the month on the receiver and the attorney for Lewis McArthur La Dow. Upon the twenty-second of March the court below, apparently upon its own motion, and without notice to or upon the application of any of the parties to the suit, directed an order to be entered "*nunc pro tunc* as of the twentieth of September, 1898," of which the following is a copy: "Now, on this day, it appearing that mandate of the supreme court herein has been filed, and judgment and decree taken and entered thereon, and therefrom it further appearing that the decree of this court in this cause is in all things confirmed and affirmed, and that therefore such decree is final, and it also appearing that under said decree the premises herein involved have been sold as by statute in such cases provided, and that there are no further duties for the receiver therein, Charles B. Wade, to perform, it is ordered that said receiver do forthwith surrender possession of all property herein involved, and in pleadings described, to plaintiff S. L. Conklin, the purchaser at said sale, and Lewis McArthur La Dow, defendant, who is declared by said decree to be the owner of one undivided half interest, subject to widow's dower, in all of said property."

REVERSED.

For appellant there was a brief over the names of *Raleigh Stott* and *Benjamin M. Lombard*, with an oral argument by *Mr. Stott*.

For respondent there was a brief over the names of *John J. Balleray* and *Carter & Raley*, with an oral argument by *Mr. Balleray* and *Mr. Chas. H. Carter*.

MR. CHIEF JUSTICE BEAN, after making the foregoing statement of the facts, delivered the opinion.

1. The motion of Mrs. Lombard, made in February, 1900, for an order of redistribution of the funds collected by the receiver, and for the delivery to her of the undivided half of 301 Court Street, was properly denied on account of her laches, if for no other reason. The original order of distribution and for the discharge of the receiver was made in September, 1898, at which time the receiver's accounts were examined, settled and approved. At that time no request was made of the court, so far as the record discloses, for an order directing the receiver to turn over the property to any one. No appeal has been taken from such order, nor was any objection made thereto by Mrs. Lombard until almost a year later, when the petition was filed in this court for an order recalling the mandate. It seems to us that under these circumstances she is not now in a position to insist that the order of September 20, 1898, be modified or disturbed. It was made in obedience to the mandate of this court, without objection by any of the parties, so far as we are advised; and the fund has been distributed in accordance therewith, except the amount apportioned to the defendant Lombard. It would, no doubt, have been proper for the court, at the time it made the order discharging the receiver, to have directed him to deliver possession of the property to the party entitled to it; but no objection was made on account of its failure to do so, either to the court below or by appeal, and it is now too late to question the validity of such order.

2. It is argued that it did not operate to discharge the receiver, because it was conditioned upon his subsequently filing receipts from the distributees, which he was unable to do, because Mrs. Lombard refused to re-

ceive and receipt for the portion directed to be paid to
her. But, with the acquiescence of all the parties, the
receiver ceased to exercise any control over the property
and ceased to collect the rents and profits thereof, so that,
while the order may in some sense be informal, yet its
effect was to discharge the receiver and exonerate him
from any further liability as such ; and if Lewis Mc-
Arthur La Dow wrongfully obtained possession of the
property, as Mrs. Lombard claims, it was due largely to
her own negligence.

3. The alleged *nunc pro tunc* order of March 22 is,
however, clearly void, and cannot affect the rights of the
parties in any way. There is no finding that such an
order was in fact made on September 20, 1898, and that
the entry thereof was inadvertently omitted by the clerk ;
but it seems to be an order made on the twenty-second
of March, 1900, which the court directs to take effect as
of the twentieth of September, 1898, and, clearly, the
court had no power or authority to make any such an
order. It was apparently an attempt to amend the order
of September 20. And Mr. Black says : "The power of
courts to order the entry of judgments *nunc pro tunc* is
not to be used for the purpose of correcting errors, omis-
sions or mistakes of the court. It cannot direct a proper
judgment to be thus entered, when the fault is that the
first judgment is one which should not have been en-
tered in the case, or is imperfect or improper. * * *
Hence the court cannot at a subsequent term change its
judgment to one which it neither rendered nor intended
to render, nor supply an order which it might or ought
to have made, but wholly omitted to make :" 1 Black,
Judgm. § 132. The order of March 3, 1900, will there-
fore be affirmed, but the *nunc pro tunc* order of March 22
will be vacated and held for naught. This conclusion,
however, will be without prejudice to any further pro-

ceedings by Mrs. Lombard for an accounting, or to assert her claim to the property in controversy; and neither party will recover costs on the appeal.    REVERSED.

Decided 23 July, rehearing denied 15 August, 1900.