EVANS, C. J., WEAVER, STEVENS, ARTHUR, and DE GRAFF, JJ., concur.

---

MINNIE B. ARTHUR, Appellee, v. WRIGHT COUNTY et al., Appellants.

**HIGHWAYS: Abandonment.** A highway must be deemed legally abandoned when, for almost half a century after its legal establishment, it remains unopened, unimproved, obstructed by cross-fences, in places naturally impassable, and with a degree of public use quite negligible.

*Appeal from Wright District Court.*—G. D. THOMPSON, Judge.

DECEMBER 13, 1921.

SUIT in equity, to enjoin certain public officials of Wright County from opening an alleged highway through the farm of the plaintiff. There was a decree for the plaintiff for a part of the relief prayed for, and the defendants have appealed.—*Affirmed.*

*J. A. Rogers, Maurice Birdsall,* and *Leslie Archerd,* for appellants.

*O. J. Henderson,* for appellee.

EVANS, C. J.—Certain of the defendants notified plaintiff to open the alleged highway through her farm, said highway purporting to have been located along the section line north and south between Sections 21 and 22. The demand of the defendants was predicated upon the claim that a legal highway was established along said line in 1871. The plaintiff pleaded that no highway was ever legally established along such section line, and pleaded further that, if a highway ever had been legally established along such line, it had long ago been abandoned by the county, and that the plaintiff and her grantors had been in the adverse possession of the land comprising the claimed location for about 50 years. The plaintiff is the owner of the east one half of the northeast quarter of Section 21, and is also the owner of the northwest quarter of Section 22, and of the north half of the southwest quarter of Section 22. Her land, therefore, abuts on both sides of the north half mile of the claimed section-line highway, and abuts also upon the east side of said claimed highway for the further distance of a quarter of a mile. In her petition, she challenged the existence of a highway for the full distance for which her land abuts upon it on either side. The court below found that the establishment of the road in 1871 was legal, and that the south quarter mile of such road had been sufficiently used by the public to defeat the plaintiff's claim of adverse possession and to negative the claim of abandonment. The court further held that the north half mile had been abandoned, in legal effect, by the failure of the public to use the same and of the public authorities to open or to utilize the same. So far as the decree was adverse to the plaintiff, she has not ap-

pealed. The defendants alone appeal from the adverse finding of the court as to the north half mile. In view of this state of the record, we shall assume the legal establishment of the road without giving consideration to the question, and shall confine our inquiry to the question of legal abandonment.

Speaking broadly, the north half mile in question has always been impassable to ordinary public travel, because of the presence of a certain stream and of the wet lands adjacent thereto. The exception to be made to this statement is that there were times of extreme dryness when the stream ran dry, and thereby temporarily made travel possible thereover. Ever since the alleged establishment of the highway, the plaintiff and her grantors have been in the actual possession of her farm. It has been at all times fenced and cross-fenced. The cross-fences extended across the highway. There was also a cross-fence that extended from north to south along the section line between Section 21 and Section 22, except for a sector of a few rods extending south from the stream referred to. About 60 rods south of the plaintiff's north fence, the stream known as "Maggy Creek" ran easterly. The plaintiff's dwelling was upon the 80 acres situated in Section 21, and abutted upon the east and west highway running along the north line of the section. It was north of "Maggy Creek," and was near the west line of the farm. About 1906, a public drainage open ditch was laid along "Maggy Creek." No travel ever crossed "Maggy Creek" thereafter upon the line of the alleged highway. Some slight travel did pass through the yards of plaintiff at her house, and across "Maggy Creek" upon the plaintiff's private bridge; thence through the plaintiff's fields to the open road upon the south half mile of the section line. A part of the distance thus traveled south of "Maggy Creek" was along the east side of the fence erected by the plaintiff upon the section line between the two sections. Going to the south end of the section line between the two sections, we find this situation: Schuder owned the southeast quarter of Section 21, and Blackwell owned the south half of the southwest quarter of Section 22. Schuder recognized the highway for the south half mile, and set in his fence two rods west from the section line. Blackwell, abutting on the east side for a quarter of a mile, also recognized the highway, and set in his fence two

rods east.  Arthur, who owned the 80 acres adjoining Blackwell on the north, refused to recognize the highway, and set his fence upon the section line; and, as already indicated, this was extended to the north line of the section.  The result at the south end was that there was open a 4-rod road for the first quarter of a mile and a 2-rod road for the second quarter of a mile.  Gates were placed in the fences of the plaintiff (whether for her own use or for public use is in dispute).  From the north end of this south half mile of road, or *cul-de-sac*, travel was able to proceed through gates through the fields of the plaintiff, first along the section line, then west and north over the plaintiff's bridge and. through her yards and over her driveway into the highway along her north line.  No attempt was ever made by the public authorities to bridge ''Maggy Creek'' until just before the commencement of this suit, nor does it appear that any other improvement was ever made or expenditure of any kind incurred upon this alleged highway.  The defendants' main reliance is upon the fact that the plaintiff maintained gates, which were used without objection by more or less public travel.  Some stress is laid upon the fact that there was a gate at plaintiff's north fence, one end of which hinged upon the section line fence.  The argument is that this gate was maintained for the public.  The contention of the plaintiff is that it was used for her own convenience, as an exit from her own field.  The actual travel over this route was very slight, even according to the testimony of the defendants.

We think the case is clearly ruled by our previous holdings, as announced in the following cases:  *Heller v. Cahill*, 138 Iowa 301; *Lucas v. Payne*, 141 Iowa 592; *Hatch v. Barnes*, 124 Iowa 251; *Rector v. Christy*, 114 Iowa 471.

If the question were an open one, there is much to be said for the contrary doctrine.  The writer hereof would be strongly inclined thereto.  It is manifestly true that much of the establishing of highways in an early day was done in response, not to present needs, but to the certainty of future needs.  The order establishing the highway in this case established also highways along all section lines in the township.  The fact that the habitation was sparse rendered impossible the immediate use of all of them.  They came later into demand by reason of the increase of population.  At the present time, a highway is evidently needed

upon the line now under consideration. Our previous cases here cited, however, have established a rule of property which we are not at liberty to disturb. Fortunately, it is within the power of the public authorities to re-establish the highway, at the expense of condemnation. Obedient to our previous holdings above cited, we must now hold that the north half mile of the alleged highway was abandoned. This was the holding of the trial court, and its order is—*Affirmed.*

Weaver, Preston, and De Graff, JJ., concur.