## TOMPKINS *v.* CLACKAMAS COUNTY.

APPEAL from Clackamas County.

*J. K. Kelly*, for appellant.

*T. R. McBride*, for respondent.

By the Court, LORD, J.:

By the act approved October 26, 1874, four terms of the county court of Clackamas county were required to be held, to-wit: on the first Monday in January, April, July and September in each year, and this act was in force until it was repealed in October, 1882.

On the 5th day of September, 1881, a petition was presented to the county court to appoint viewers to view and lay out a county road, as described in the record. On the

same day, the viewers were appointed and required to meet on the 24th day of September to view and locate the road, "and to report in writing at the next term of this court."

On the 9th day of September, an order in the following words was entered in the minutes of the county court: "The judge thereof, during this term time by general order hereby made and entered of record, does hereby appoint the third Monday of October, the 17th day of October, as a term of court, commissioners attending for the purpose of transacting county business."

A report in favor of establishing the road was made by two of the viewers. It is dated October, 1881, but has no date of filing on it. The road, as laid out by the viewers, passes through the donation claim of D. D. Tompkins, the defendant, from the southern to the northern boundary, which before the road was laid out was an inclosed pasture field.

On the 17th day of October, 1881, the report of the viewers was read a first time, and on the 18th day of October it was read a second time, and then the report of the viewers was confirmed, and the road established in conformity therewith.

On the 5th day of January, 1882, the first day of the next regular term of the county court, D. D. Tompkins, the defendant, filed his claim for damages, on account of the injury he would sustain by the opening of the road, amounting to $2,500. This claim was rejected by the court, on the ground that it ought to have been presented at the appointed term of the county court, held on the 17th day of October, 1881.

The simple question for this court to decide is, whether the appointed term of the county court, held on the 17th day of October, 1881, or the regular term fixed by law on

the first Monday of January, 1882, was the proper time to consider the report of the viewers.

The statute provides that "the plat and survey of said road or alteration shall be delivered to the county clerk by one of the viewers, on or before the third day of the session of the county court then next ensuing; and it shall be the duty of the county court on receiving the report of the viewers aforesaid, to cause the same to be read on two different days of the same meeting; and if no  *  *  * petitions for damages be filed, the court shall," &c.   (Statutes of Oregon, p. 723, sec. 5.)

When the statute speaks of terms, the terms constituted by law are meant, not special terms appointed by the court. (*Commonwealth* v. *Sessions of Norfolk*, 5 Mass., 435; *South* v. *Cutter*, 10 Wend., 590.)

Besides, the record shows that on the 9th day of September, 1881, the judge, and not the court acting as a board of commissioners, appointed a term of court to be held on the 17th of October.   It does not appear that the commissioners were present, or that they concurred in such appointment, and in fact it does not appear from the record that the *court* appointed a term to be held on October 17th.   It is well settled that a court of inferior jurisdiction must show by its record its authority to act in the particular case, or as it is somewhere expressed, the facts conferring jurisdiction and the power to act in the given case must affirmatively appear upon the face of its record.   Now, when it is considered that it is an inferior court proposing through the device of a mere technicality to appropriate the land of a private citizen for a public road, without compensation and *in invitum*, every consideration of public justice and constitutional right requires that the power or jurisdiction of the court in the premises should be without objection.

Certainly, if the property of the individual is to be taken without compensation by a mere technicality, the record of the proceeding of the court by which it is done should be beyond the reach of a similar objection. Now, when the defendant appeared at the regular term of the court in January, 1882, and filed his petition for damages, it was found that the record did not disclose that the special term of which he had no notice, had not been appointed regularly, and to cure that defect and cut off his claim for damages, at the next regular term in April, a *nunc pro tunc* order was made to cure the defect of the order of September 9, 1881. Can the defendant's rights be taken away in that manner? If it can, then an order of no force and which is impliedly admitted, may be amended by a *nunc pro tunc* order so as to be held that notice was given, and thus violate the constitutional rights of the citizen by condemning his property without a hearing and without compensation. We do not think that a *nunc pro tunc* order will be made except in furtherance of justice. Mr. Freeman on Judgments says: "The failure of a court to act or its incorrect action can never authorize a *nunc pro tunc* entry, if no judgment be rendered, or if an imperfect or improper one be rendered, the court has no power to remedy any of their errors by treating them as clerical mistakes." Such an order applies only to correct a record between parties, not to correct or change an order of the court, in relation to its own proceedings by which injustice will result by depriving a party of his property without compensation or a hearing.

The judgment is reversed.

WALDO, J., concurring.