MARTHA A. RECTOR AND J. N. RECTOR v. IRA CHRISTY, Supervisor of Road District No. 1, Appellant.

**Vacation of Highway:** CONSTRUED. Where a petition for the vacation of a highway extending along a township line and across a quarter section prays for a change of the portion through the quarter section, and such change is ordered, such proceeding does not vacate the portion of the old road along the township line, it appearing that such portion was not rendered unnecessary by the alteration.

**Highways:** ADVERSE POSSESSION. Where a highway extending along a township line and through a quarter section is vacated as to the portion through the section, and the portion along the township line is fenced by the adjacent owner, and occupied by him adversely to any claim of the public for ten years, the public is barred from asserting any claim thereto.

*Appeal from Davis District Court.*—HON. M. A. ROBERTS, Judge.

FRIDAY, OCTOBER 4, 1901.

PLAINTIFFS, claiming that part of a certain established public highway across their land had been vacated and abandoned, inclosed the same, by a fence, with their land. The road supervisor, claiming that part of said highway had not been vacated nor abandoned, gave notice to the plaintiff to remove said fence, and, they failing to do so, he was about to remove the same, whereupon this action was brought to perpetually enjoin him from doing so. Upon final hearing decree was rendered making the temporary injunction theretofore granted perpetual, with judgment for costs against the defendant. Defendant appeals.—*Affirmed.*

*Rominger & Rominger* for appellant.

*H. C. Taylor* for appellees.

GIVEN, C. J.—The following is a correct plat of the place in question:

The public highway existed from A to C by way of E and D February 5, 1880, T. J. Dunlavey and 26 others petitioned the board of supervisors for a change of said highway so as to run from A to C by way of B; " also to vacate that portion of the public highway that runs in an angling direction across the northeast quarter of the northeast quarter of section 3, township 69, range 13 west." A commissioner was appointed, and reported, "I would respectfully recommend that said change and vacation be made." Notice was given "to whom it may concern" of the pendency of said petition, and of what was asked therein. There being no objections, and no claims for damages, it was, on March 9, 1880, ordered that the change as above petitioned for be established' on payment of the costs herein made," and soon thereafter the highway was opened from A to C by way of B, and has ever since been used as such. The old road from E to C, by way of D, was inclosed with the land of Dunlavey, through which it ran.

I.    The first contention is whether that part of the original road upon the township line from A to E was vacated by this action of the board of supervisors. The petition of Dunlavey and others asked a change of the road as was made 'from A by way of B to C; "also to vacate that portion of the public highway that runs in an angling direction across the northeast quarter of the northeast quarter of section 3, township 69, range 13 west." It will be observed that this does not include that part of the township line from A to E. It does not appear that there was an established road on the township line, either east from A or west from E, but it does appear that there was considerable travel on that line east and west of these points. Mr. Dunlavey testified that he did not intend to ask in the petition that any part of the old road should be vacated, except that part angling though his land. The report and recommendation of the commissioner and the notice followed the language of the petition as to change and vacation, and the final order was "that the

change as above petitioned for be established was not only a re-location, but also a vacation, of the part that ran in an angling direction across Dunlavey's land. It was surely the intention not only to re-locate, but also to vacate, as asked by the petition; but there was no intention or authority to extend the re-location or vacation beyond that asked. Appellees' counsel quotes from *Bennett v. Clemence,* 6 Allen, 10: "The alteration of the old road involves the discontinuance of that part of it which is altered, and under the citation to alter a road it is competent to discontinue the portion rendered unecessary by the alteration." The part of the old road in dispute was not rendered unnecessary by the alteration. It was necessary to afford access to Onstott's land and for travel on the township line. There is no inconsistency in the existence of the new and this part of the old road. They quote from *Brook v. Horton,* 68 Cal. 554 (10 Pac. Rep. 204) as follows: "It has been held in Massachusetts, and, we think, must be held here, that an alteration, by competent authority, of the existing road or way, is a discontinuance of those portions of the way which do not come within the newly-assigned limits, and no special order of discontinuance is necessary." This reasoning applies to that part of the road on the lands of Dunlavey, but not to the part in question. *State v. Reesa,* 59 Wis. 106 (17 N. W. Rep. 873), is also cited to the effect that it follows from an alteration that the part of the old road hereby rendered unnecessary is discontinued. Applying this rule, we think it must be said, under the facts before us, that the part of the old road in question was not rendered unnecessary by the alteration, and was not vacated by the proceedings before the board of supervisors.

II. We now inquire whether there was an abandonment of the part of the road in question; or, in other words, whether, by reason of plaintiff's occupation, the public is barred from now asserting a right therein. "Adverse possession should continue for ten years by anal-

·ogy of the statute of limitations.   Then it should be shown
that there was a total abandonment of the road for at least
.a period of ten years." *Davies v. Huebner*, 45 Iowa, 574.
In *Orr v. O'Brien*, 77 Iowa, 253, we said:   "This court
holds that there are cases where the non-user has continued
for such a length of time, and private rights of such a char-
·acter have been acquired by a long-continued adverse posses-
sion, and the consequent transfer of land by purchase and
sale, that justice demands the public should be estopped from
asserting the right to open the highway.   The first requisite
to establish such an estoppel should be that the adverse pos-
·session should continue for more than ten years by analogy
to the statute of limitations.   Then it should be shown that
there was a total abandonment of the road for a period of at
least ten years.   In the case at bar there was an entire non-
usage of that portion of the road in controversy from the year
1864 to the present, and actual, open, notorious, and adverse
holding of possession by the defendant and her devisor for
more than ten years.   Under these circumstances we be-
lieve the public should be estopped from claiming any right
in the part of the line thus inclosed, and that the defendant
has a right to extend her fences to the hindrance of
travel over the adjacent lands."   The order of the board
of supervisors was made May 11, 1880, the defendant's
notice to remove the fences within 30 days was given July
16, 1898, and this action was begun August 28, 1898.   A.
large number of witnesses were examined as to the time when
the plaintiffs built their fence, some testifying that it was
in 1888, and others that it was in 1889 ; many of them giving
reasons for fixing the time they did.   The fence was main-
tained continuously from the time it was built, and from
that time the plaintiffs occupied openly, notoriously, and ad-
versely to any claim of the public, and the public did nothing.
in the way of asserting any right to the old road from A to
E.   We should not take space to here summarize or discuss
this volume of testimony.   It is sufficient to say that after

a careful reading of it we are of the opinion that the weight of the evidence is in favor of the conclusion that the fence was built in the spring or early summer of 1888. It follows from this conclusion that under the authorities the public should be held to have abandoned the part of the road in dispute, and to be barred from now asserting a claim thereto as a public highway.—AFFIRMED.