Submitted on briefs November 27, 1933; affirmed January 16, 1934

JACKSON *v.* UNITED RAILWAYS CO. ET AL.

(28 P. (2d) 836)

*Lord, Moulton & Krause,* of Portland, for appellant.

*Carey, Hart, Spencer & McCulloch and Fletcher Rockwood,* all of Portland, for respondents.

CAMPBELL, J. Plaintiff was employed by defendant, United Railways Company, as a section foreman and by the terms of his employment worked in

interstate commerce, maintaining the right of way of defendant. On August 2, 1930, on his way home in the evening, plaintiff discovered a large log, about three feet in diameter and 40 feet long that had fallen from a logging train operated by defendant, lying on the railroad right of way and partially imbedded in the road bed, near the track, in such a position as to endanger the safety of any train being moved along that part of the track. Plaintiff's crew consisted of himself as foreman and four other men. Plaintiff put his crew to work removing the obstruction. It was necessary to raise the log out of its bed to enable the crew, with its limited equipment, to roll it away from the track. To do this, it required the combined efforts of all five men. Under the direction of plaintiff, the men used a piece of timber seven inches by nine inches, 14 feet long, as a pry or lever. In raising the log, it became necessary to put a block under it, and, to do this, Mr. Randall, one of the crew, had to leave the pry. When the man left the pry, it sprung up and injured plaintiff. The negligence relied on by plaintiff is that the man whom he selected to do the blocking carelessly and negligently let go of the pry.

The action was brought under the Federal Employers' Liability Act. Motions for a non-suit and directed verdict were seasonably made by defendant and overruled. The cause was submitted to a jury which returned a verdict in favor of plaintiff. On October 20, 1932, judgment was entered thereon. On October 24, 1932, the trial court, on its own motion, set aside the judgment and verdict, and on October 26, 1932, entered a further order granting a new trial. These proceedings were all had at the same term of court. Plaintiff appeals.

■ The record presents two questions: (1) Did the court err in making the orders, upon its own motion, setting aside the judgment and granting a new trial? (2) Assuming that the court had such authority, did it abuse its discretion in so doing?

Appellant contends that the court had no authority or discretion to set aside a judgment on its own motion, except within the time allowed by statute for the filing of a motion for a new trial.

"A motion to set aside a judgment and for a new trial, with the affidavits, if any, in support thereof, shall be filed within one day after the entry of the judgment sought to be set aside, or such further time as the court may allow.   *   *   *" Oregon Code 1930, § 2-803.

"It is well settled that all the judgments, decrees or other orders of courts, however conclusive in their character, are under the control of the court which pronounces them during the term at which they are rendered or entered of record, and that they may then be set aside, vacated, or annulled by that court." 15 R. C. L. § 143, p. 690. Deering v. Quivey, 26 Or. 556 (38 P. 710); Ayres v. Lund, 49 Or. 303 (89 P. 806, 124 Am. St. Rep. 1046); Zelig v. Blue Point Oyster Co., 61 Or. 535 (113 P. 852, 122 P. 756); First Christian Church v. Robb, 69 Or. 283 (138 P. 856); Finch v. Pac. Reduction Co., 113 Or. 670 (234 P. 296); Hudelson v. Sanders-Swafford Co., 111 Or. 600 (227 P. 310).

Counsel for appellant contends that, assuming the authority of the court in its discretion to set aside a judgment during the term, in the instant case it was an abuse of its discretion to do so.

" 'When, on the trial of the issues of fact in an action at law before a federal court and a jury, the evidence, with all the inferences that justifiably could be drawn from it, does not constitute a sufficient basis for a verdict for the plaintiff or the defendant, as the case may be, so that such a verdict, if returned, would have to be set aside, the court may and should direct

a verdict for the other party' * * * A mere scintilla of evidence is not enough to require the submission of an issue to the jury. The decisions establish a more reasonable rule 'that in every case, before the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed.' Improvement Company v. Munson, 14 Wall. 442, 448. Pleasants v. Fant, 22 Wall. 116, 122.'' Gunning v. Cooley, 281 U. S. 90 (505 S. Ct. 231, 74 L. Ed. 720).

■ In cases brought under the Federal Employers' Liability Act, this court is governed by the decisions of the United States courts. *Adskim v. O. W. R. & N. Co.,* 129 Or. 169 (276 P. 1094).

To remove the obstruction from the track, it was necessary to raise the log up out of its bed. This was accomplished by three operations. On the first, the lifting end of the pry was placed under the log and the other end brought down and depressed, by the combined efforts of the whole crew, until it was about ''between the knees and the waist'', and a block placed under the log to hold it to the position to which it was raised. The pry was then released and reset, evidently on a higher fulcrum, and again the men pressed down on the pry to the same extent as on the first operation, raising the log further up out of its bed and another block was placed under it to hold it up to the position attained. Again the pry was reset and when it was pressed down to the same extent as on the first two operations, Mr. Randall again left the pry to reset the block under the log to hold it up to where it had been raised. This is the time that plaintiff claimed the pry sprang up, upon Mr. Randall leaving it, and injured him.

The plaintiff testified: "I also had instructed the man before we started, to put the piece or check, whatever it was we had, under the log when we raised it up." The evidence does not disclose what further signal or order, if any, was given to Mr. Randall as to when to place the block other than it was to be done "when we raised the log up".

Plaintiff further testified that on the third operation when the pry was pressed down to about the same extent as on the two former lifts, he said to the crew, "Hold her a minute"; that it was his intention to press it down as far as possible. There is no evidence that he informed Mr. Randall of that intention or that Mr. Randall knew that any different method was to be adopted than those exercised on the first two lifts. In placing the men on the pry, Mr. Randall was nearest the log and the plaintiff farthest away. Plaintiff further testified: "Q. What was the idea of saying 'hold her'; what did you want it to be held for? A. We wanted to get a different position to get more strength on to it. Q. What happened then? A. The man evidently thought I meant to block her and let loose." Plaintiff admits that it was a mistake in judgment on the part of his co-servant, Randall.

■ Being controlled by the decisions of the United States courts in these actions, the trial court was right in granting a new trial. The cause having been submitted to a jury, we have no authority to "arrogate to ourselves power we do not possess" to deprive the plaintiff of a trial by jury. *Johnson v. Ladd,* 144 Or. 268 (24 P. (2d) 17); *Slocum v. New York Life,* 228 U. S. 364 (33 S. Ct. 523, 57 L. Ed. 879, Ann. Cas. 1914D, 1029); *Pederson v. Delaware Etc. R. Co.,* 229 U. S. 146 (33 S. Ct. 648, 57 L. Ed. 1125, Ann. Cas. 1914C, 153).

The United States Court of Appeals, pursuant to state court practice of the state of Pennsylvania, reversed a judgment for personal injuries and remanded the cause with directions to enter a judgment notwithstanding the verdict. The United States Supreme Court, in passing upon the question, said:

"We shall not undertake to analyze the evidence or review the grounds which led the court below to conclude that error was committed in submitting the case to the jury, because we think it is adequate to say that after a careful examination of the record, we see no reason for holding that the court below erred in so holding. As regards, however, the ruling on the motion for judgment *non obstante veredicto,* it is apparent, in view of the recent decision in Slocum v. Insurance Co., 228 U. S. 364, that error was committed. It follows that our duty is * * * to affirm the judgment of reversal and to modify by reversing so much of the action of the court below as directed a judgment in favor of the defendant." Young etc. v. Central Railroad Company of New Jersey, 232 U. S. 602 (34 S. Ct. 451, 58 L. Ed. 750).

From an examination of the whole record, we cannot say, as a matter of law, that the trial court committed error in granting a new trial.

The judgment of the circuit court is affirmed.

ROSSMAN, J. (dissenting).

With the view expressed in the decision of the majority that the judgments, decrees and orders of any court of general jurisdiction, however conclusive in character they may be, are under the control of the court which pronounced them during the term in which they were rendered, and that they may be set aside, vacated or amended by that court within that term, I am in accord. But the power to which reference has

just been made is not an unlimited one. It must be exercised with legal discretion that carries into effect the general policy of the law. The power is, therefore, subject to restraint and its exercise is subject to review. If, upon appeal, it is impossible to find any reason, cognizable by our system of jurisprudence, for the support of the vacating order, the order will be set aside. Let us remind ourselves that the vacated judgment with which we are now confronted was entered upon the verdict of a jury. Before proceeding further it may be helpful to review briefly the legal principle governing, in the absence of statute, the power of a court to vacate its judgment, decree or order. The power is thus defined in *Ayers v. Lund,* 49 Or. 303 (89 P. 806, 124 Am. St. Rep. 1046):

"The proceedings of the court remain in the breast of the judge until the close of the term, during which time the court has inherent right to correct, modify or vacate its decree, and its action in such a case will not be disturbed on appeal except for an abuse of discretion."

From *Kentz v. Kentz,* 209 S. W. 200, the following is taken:

"This power extends not only to matters of clerical mistake, but the court, if it concludes that a mistake as to the rights of the parties has been committed, may vacate the judgment rendered and render such judgment in its stead as he may conclude is proper, provided, of course, that the intervention of the jury is not necessary and it does not involve the entry of a judgment against the verdict of the jury."

In *Miocene Ditch Co. v. Moore,* 150 Fed. 483, Judge Ross, delivering the decision of the Circuit Court of Appeals of this district, said:

"The term of the court at which the decree was vacated by the order in question not having then ex-

pired, there can, we think, be no doubt of the inherent power of the court to set it aside on motion, if the facts justified such action, by which is, of course, meant not the exercise of an arbitrary power, but a power based upon good and sufficient reason.''

Mr. Justice Field, when Chief Justice of the California Supreme Court, in *Duff v. Fisher,* 15 Cal. 375, thus defined the common-law power of a court to set aside a judgment based upon the verdict of a jury:

''It may be, and probably is true, that the court, whether sitting in equity or on trial of a common-law action, may of its own motion set aside the verdict of a jury when it is clearly and palpably against the evidence; but when the court is satisfied with the verdict the parties can only question its correctness by following the course pointed out by the statute.''

The painstaking editor of Cyclopedia of Federal Procedure, in section 1480, thus expresses the power which a federal judge possesses to set aside a judgment based upon a verdict which he believes is unwarranted by the evidence:

''It is within the power of the court to set aside a verdict not warranted by the evidence. In the exercise of this function the court weighs the evidence in a manner which might not be proper on a motion to direct a verdict, although this rule must be considered in view of the power in federal courts to direct a verdict where if a contrary one should be rendered on the evidence the court would have to set it aside. * * * The rule seems to be that where the evidence offered for the party for whom a verdict is rendered, conceding to it the greatest probative force to which it is fairly entitled under the laws of evidence, is insufficient to support or justify the verdict, it is the duty of the court to set it aside and grant a new trial. But if the verdict is supported by substantial evidence, or based upon conflicting evidence from which different inferences might be drawn leaving the court doubtful, it

will not ordinarily be disturbed. It is not a sufficient ground for a new trial that the verdict is merely against the preponderance of the testimony, or that the court might have arrived at a different result, but the verdict must be manifestly and palpably against the evidence in the case. In other words, the verdict will be allowed to stand unless the other party is entitled to judgment as a matter of law.''

The defendants concede that the vacating order can not be sustained unless an irregularity in the record can be detected. The following is quoted from their brief:

"Points and Authorities. 1. If error occurs at the trial of such a nature that a judgment would be reversed on appeal, the trial court has authority to set aside the judgment and order a new trial.''

The defendants do not claim in their brief any irregularity in the formulation of the pleadings, in the impaneling or conduct of the jury, in the reception of the evidence, in the conduct of counsel or in the instructions to the jury.

The manner in which the injury befell the plaintiff is free from dispute. Only four witnesses, including the plaintiff, testified upon this phase of the case. All four of them were members of the section crew. Three of these witnesses were called by the defendants, but gave testimony which in no detail contradicted the testimony of the plaintiff. In fact, the defendants' brief nowhere criticizes any utterance of these four witnesses as untrue. Thus, the uncontradicted and unquestioned evidence reveals the situation described in the decision of the majority—with a single exception: The majority decision states: "Plaintiff admits that it was a mistake in judgment on the part of his coservant Randall.'' The portion of the testimony upon

which the majority evidently relies as foundation for that statement follows a lengthy answer made by the plaintiff wherein he said that Randall let go of the pry just after he (the plaintiff) called out: "Hold her a minute; hold her a minute." He had testified that by this command he intended that the crew should not release their pressure upon the pry, but, by keeping the pry in its position, afford him an opportunity to change his grip. He was then asked: "What was the idea of saying 'hold her'; what did you want it to be held for? A. We wanted to get a different position. Q. So you could do what? A. So I could get a different position to get more strength onto it. Q. What happened then? A. The man evidently thought I meant to block it, and he let loose." Manifestly, the witness could not know the thoughts which were in Randall's mind. But apparently the majority rely upon the answer to the last question above quoted as the foundation for their statement that Randall had made a mistake in judgment. They do not say that this supposed mistake justified the vacating order of the circuit court. It is manifest that if this answer indicated that Randall had erred in judgment the plaintiff was still entitled to have the jury determine whether the error was a negligent one.

In seeking to uphold the action of the circuit court in setting aside its judgment the defendants contend— and this is the only contention which they advance— that the circuit court erred when it denied their motions for a nonsuit and for a directed verdict. In support of this contention, the defendants advance two specific arguments of which note will now be taken. In the first of these they argue that when the plaintiff called out his command, "Hold her a minute; hold her a minute" that he gave "ambiguous instructions" and

"could not recover for injury resulting from actions of a subordinate employee who has failed to interpret correctly the orders." If, by chance, any one could say that the command just quoted was ambiguous, surely he will concede that the issue as to its character was a question of fact for the jury's determination. The second argument is: "A workman who takes a dangerous position without warning or notice to fellow workmen can not recover for injuries resulting from customary operations by other workmen." There is not one syllable of testimony which indicates that the plaintiff changed his position prior to being injured. The uncontradicted testimony shows that the plaintiff was in the same position at the time of his injury as he had occupied previously; that is, out at the end of the pry. He merely sought a chance to change his grip. Thus, disposition is made of every contention advanced in support of the vacating order.

The defendants concede that the fellow-servant rule has no application to actions brought under the Federal Employers' Liability Act. They also concede that contributory negligence, if any is present, merely mitigates damages. Assumption of risk is neither argued by the defendants, nor is it available as a defense. The distinction between foremen and others is not found in the Federal Employers' Liability Act. The sole issue in the case is whether the evidence shows that Randall's unannounced act in suddenly releasing his weight from the pry and thereby permitting it to fly upward was negligent. If it was, the judgment should not have been vacated. If the defendants' witness, who himself branded Randall's act as dangerous, is to be believed, the verdict is sustained by direct proof produced by the defendants. The issue determined by the jury was a simple one. There was

no conflict in the testimony that needed reconciliation. It was not necessary to weigh the evidence and seek for hidden, cleverly-concealed motives because most of the testimony came from witnesses for whose veracity the defendants vouched. Thus, the jury was relieved from making the difficult search for the truth which in most cases is the most perplexing duty which confronts it. There was for solution only the question whether Randall's act was a negligent one. It was a simple, commonplace question. Almost every one has helped or observed a group lift a bulky object, possibly by the aid of a pry, and has learned from experience or observation whether the unheralded act of one who suddenly releases his grip, imperiling the others, is a negligent act. It is common knowledge that all workmen condemn an act such as Randall's in no uncertain language. Randall did not testify, and, hence, we have no explanation from him. The defendants concede that the authorities agree that if one member of a crew of workmen, who are working in concert and who have agreed that no one of them shall act except upon signal from a superior, suddenly acts without waiting for the signal and thereby causes an injury to befall another member of the crew, the premature act may constitute negligence, imposing liability upon the employer. It is my belief that the application of this rule to the facts disclosed by the evidence sustains the verdict and that, since nothing can be found which constitutes justification for the vacating order, the circuit court erred when it entered the latter. I, therefore, dissent.

BEAN, J., concurs in this dissent.