Argued November 10, 1949; reversed and remanded
February 1, 1949

# BOGH *v.* BOGH
202 P. (2d) 503

*Randall S. Jones,* of Portland, argued the cause for appellant. On the brief were Jacob, Jones & Brown, and Eugene H. Dowling, of Portland.

*Howard P. Arnest,* of Portland, argued the cause and filed a brief for respondent.

94

Before Rossman,* Chief Justice, and Lusk,** Belt, Kelly, Bailey and Hay, Justices.

ROSSMAN, J.

This is a consolidation of two appeals taken by the defendant from two orders made by the Circuit Court for Multnomah County which affect a decree of divorce entered by that court December 14, 1944, approximately two and one-half years before the making of the challenged orders. Prior to the entry of the divorce decree the appellant was the husband of the respondent. The plaintiff (wife) in the divorce suit is the respondent in this appeal. The first of the challenged orders was entered July 30, 1947, the second, October 24, 1947.

The divorce decree, in addition to dissolving the bonds of matrimony, contained these provisions:

"2. That plaintiff be granted the care, custody and control of Jacqueline Bogh, one of the minor daughters of the parties, . . . .

"3. That the plaintiff be and she hereby is granted the right to have and hold possession of

---

* Chief Justice when this case was argued.
**Chief Justice when this opinion was rendered.

the following described parcel of real property,
to-wit:

> Lots Thirty-seven (37) and Thirty-eight (38),
> Gregory Heights, within the corporate limits
> of the City of Portland, Multnomah County,
> Oregon,

so long as she shall occupy the same as a home for
herself and Jacqueline Bogh, her minor daughter,
until said minor child shall reach her majority."

A part of the decree, of which we omitted mention, was
modified January 11, 1946. That modification is im-
material to the issues before us and will receive no
consideration.

July 30, 1947, by one of the two orders challenged
by this appeal, the court modified the decree in a par-
ticular which the respondent deems material. The
modifying order provided:

> "(b)   That plaintiff's petition for modifica-
> tion of the decree entered herein on December 14,
> 1944, as modified by order of January 11, 1946, be
> and is allowed and the same is hereby modified in
> this particular, namely: by adding thereto para-
> graph,
> "2a.   That plaintiff and defendant be and they
> are hereby declared the owners, each an undivided
> one-half interest in that certain real property sit-
> uated in Multnomah County, Oregon, described as
> Lots 37 and 38, Gregory Heights, in the City of
> Portland; * * * "

That property was the home of the parties. The lots
were improved with a dwelling house. We shall refer
to it as the home.

The second order attacked by this appeal was en-
tered October 24, 1947. Its material part follows:

> "It is ordered that defendant's motion to va-
> cate a portion of the order made herein on the 28th

. day of July, 1947, and entered herein on the 30th day of July, 1947, be and the same is hereby over-ruled; * * * ."

It is seen that the second order (October 24, 1947) did not modify the decree. It refused to strike from the decree the paragraph that was added by the order of July 30, 1947. The two orders are controlled by the same principle of law.

The issue before us is precipitated by the following proposition which the appellant's counsel present in their brief:

"After the expiration of a term of the Circuit Court in which a decree was entered, the Circuit Court is without power or jurisdiction to make a substantial change in or addition to such decree."

Retracing for a moment our steps, it will be seen that the decree of divorce was entered December 14, 1944, and that the order of modification was not made until July 30, 1947. Although the divorce decree made no adjudication of the ownership of the home, the attacked modifying order (July 30, 1947) decreed that the respondent owned an undivided one-half interest in the property. It held that the appellant owned the remaining half. The decree and the orders were entered by the Circuit Court for Multnomah County, which comprises the fourth judicial district: § 93-211, O. C. L. A. Section 93-252, O. C. L. A., provides:

"The terms of the circuit court in the fourth judicial district shall be held annually as follows in the county of Multnomah: On the first Monday in January, the first Monday in February, the first Monday in March, the first Monday in April, the first Monday in May, the first Monday in June, the first Monday in September, the first Monday

in October, the first Monday in November, and the first Monday in December.''

It will be observed that more than a score of court terms intervened between the entry of the decree and the making of the modification order.

Before undertaking to analyze the merits of the appellant's contention, we shall recount further the procedure that was employed and take note of some facts that were developed.

The complaint was filed July 19, 1940. It alleged:

"That there are three minor children as a result of said marriage, to-wit: Billie Major Bogh, age 13 years; Della Ann Bogh, age 12 years; and Jacqueline Bogh, age 11 years; * * * that the plaintiff and defendant are purchasing under contract the following described real property, to-wit:

"Lots 37 and 38, Gregory Heights, within the corporate limits of the City of Portland, Multnomah County, Oregon, which property is of the estimated value of $1,500.00; that there is a balance due under said contract in the amount of $350.00; * * * ."

It seems evident that the couple had no interest in any other real property.

The prayer petitioned for a decree, not only terminating the marriage and awarding the custody of the children, but also ''for such other and further relief as to this court may seem just and equitable, including the adjudication of property rights between the parties.''

July 13, 1943, the respondent filed a supplemental complaint. From it we quote:

"Plaintiff and defendant are the owners of the following described parcel of real property, to-wit:

Lots Thirty-seven (37) and Thirty-eight (38),

Gregory Heights, within the corporate limits of the City of Portland, Multnomah County, Oregon,

which property is of a reasonable value of One Thousand Eight Hundred Dollars ($1,800.00), . . . that plaintiff has worked during most of her married life and contributed substantially toward the purchase of said real and personal property; and that the same should be set aside to her for the use and benefit of herself and the minor children; * * * ."

The prayer asked:

"1. * * *

"4. That plaintiff be declared to be the owner of the real property hereinabove described * * * ."

The answer and cross complaint contained the following:

"Admits that at the time of filing of said complaint the defendant was purchasing Lots 37 and 38, in Block 16, of Gregory Heights, in the City of Portland, Multnomah County, Oregon. * * *

"Answering plaintiff's supplemental complaint * * * Admits that the defendant is the owner of Lots 37 and 38, in Block 16, of Gregory Heights, in the City of Portland, Multnomah County, Oregon."

Apparently in the three years which passed between the filing of the original complaint and the submission of the supplemental one, payment of the contract price was completed and the vendor executed a deed to the property.

After the pleadings had been exchanged in the divorce suit a trial was held December 11, 1944. The transcript of evidence is before us. It states:

"After a conference in chambers between the Court and respective counsel, the following pro-

ceedings were had and done in open court, as follows, to-wit: * * * ."

At that point is transcribed the testimony given by the respondent, she being the only witness who testified. What occurred in the conference is not disclosed by the transcript. The respondent gave no testimony whatever concerning the real property, and, apart from answering in the affirmative a question that asked whether she could support Jacqueline "if you are allowed to live in the home," she left unmentioned the real property. She confined her testimony to her charges of cruelty and to suggestions concerning the custody of the children. At the close of her testimony the trial judge stated:

"Plaintiff may be granted her decree and the custody of the youngest girl; the custody of the other two children as stipulated. Possession of the home property will be given to the plaintiff as long as she remains in the home and maintains a home for the youngest child. You gentlemen can collaborate upon the form of decree."

Thereupon the following occurred:

"Mr. Dowling: Why not have it read, then, that the custody of the two older children will be given to him?

"Mr. Kenny: Well, we can agree on that.

"The Court: Yes, and you can provide for that in the decree, anyway. Attorney's fees to the plaintiff in the sum of seventy-five dollars and costs."

The material part of the decree is quoted in a preceding paragraph of this opinion. It will be recalled that it granted the respondent possession of the home "so long as she shall occupy the same as a home for her-

self and Jacqueline Bogh, her minor daughter, until said minor child shall reach her majority."

July 11, 1947, the appellant filed a motion "for an order modifying the decree heretofore made and entered in the above-entitled cause, by determining the plaintiff's right to the use and possession of the real property." It seems that the word "determining" was used when "terminating" was intended. The motion was accompanied with an affidavit which stated:

"Above-named Jacqueline Bogh was duly married to one Donald Farrier, of Portland, Oregon, on the 1st day of November, 1946, and some time prior to the 30th day of December, 1946, both she and the plaintiff abandoned the use of said premises as a home, and said plaintiff is now renting said premises to strangers who now occupy them."

After a copy of the motion and its accompanying affidavit were served upon the respondent, she filed an affidavit in which she admitted that Jacqueline was married November 1, 1946. Her affidavit, dated June 13, 1947, set forth:

"Further, that although the deed of record affecting real property mentioned in the decree stands in the name of the defendant as Ervin C. Bogh, being dated October 25, 1941 and recorded November 7, 1941, in Book 647, page 348, of the Deed Records of this county, the title to said property is vested in the parties as tenants by the entireties until the day of the decree herein and thereafter as joint tenants, each of an undivided one-half, by virtue of the purchase thereof under written contract in the name of the parties as vendees; that it now appears, as plaintiff has only now through information obtained from her counsel in these instant proceedings, that the defendant surreptitiously and without any release, authorization

or authority of the plaintiff surrendered the contract to the vendors and in some manner induced them to issue deed as it now appears of record in his name alone; that plaintiff is in fact the owner of an undivided one-half interest in said property; * * *

"Wherefore, plaintiff having answered prays that defendant's affidavit and motion avail him nothing; that she be decreed to be the owner of an undivided one-half interest in the real property mentioned in the decree; * * * ."

In the manner just indicated, the issues were developed which resulted later in the entry of the order of July 30, 1947; that is, the order which awarded to the respondent a half interest in the home. In a further effort to make clear the manner in which that issue was developed, we add that it came about in this way: (1) The appellant moved July 11, 1947, for a termination of the respondent's right to possession of the home, and accompanied his motion with an affidavit which showed that Jacqueline had reached the age of majority and that neither she nor the respondent were any longer occupying the property; (2) upon being served with that motion and its accompanying affidavit, the respondent countered with an affidavit which stated that prior to the divorce she and the appellant owned the home as an estate by the entireties and that since the divorce they owned it "as joint tenants." She prayed that she be decreed owner of a one-half interest in the home.

After the exchange of those and some supporting affidavits, the issue was submitted for determination upon (1) the aforementioned affidavits, (2) the testimony received at the divorce trial, (3) the contract the parties signed when they purchased the property,

and (4) the deed of conveyance which was executed and delivered after payment of the property had been made. No testimony was taken. July 30, 1947, the court announced its decision through the medium of the order (July 30, 1947) which we have already described.

September 15, 1947, the appellant moved to vacate the order just mentioned. The motion expressed as its reasons:

"This motion is based upon the ground that the above quoted portion of said order is void for the reason that the final decree in this cause was entered on the 13th day of December, 1944, that the term in which said decree was entered has long since expired, that said portion of said order purports to make a substantial addition to the provisions of said decree, that no evidence was introduced at the trial of the divorce suit that would support a decree containing the provisions which the said quoted portion of said order purports to add to said decree, and after the expiration of the term in which said decree was made and entered this Court in the face of the record of this cause was without power, authority or jurisdiction to make an addition to said decree such as the quoted portion of said order purports to make."

The motion was denied by the order of October 24, 1947.

It will be recalled that the complaint averred that husband and wife "are purchasing under contract" the real property in question. The contract is before us. It shows that it was signed September 21, 1936, and that the purchasers were the appellant and the respondent. The deed to the property is also before us. It was executed October 25, 1941. It named as grantee the appellant.

From Freeman on Judgments, 5th Ed., § 141, p. 269, we take the following:

"As a general rule, unless control over it has been retained in some proper manner, or a statute otherwise provides, no final judgment can be amended after the term at which it was rendered or after it otherwise becomes a final judgment. The power of courts to correct clerical errors and misprisions and to make the record speak the truth by nunc pro tunc amendments after the term does not enable them to change their judgments in substance or in any material respect. And this is true even though the judgment has not been formally entered of record by the clerk where such entry is not essential to its validity. Consequently it is well settled that, in the absence of statute permitting it, the law does not authorize the correction of judicial errors, however flagrant and glaring they may be, under the pretense of correcting clerical errors. To entitle a party to an order amending a judgment, order, or decree, ordinarily, he must establish that the entry as made does not conform to what the court ordered."

See, to like effect, Black on Judgments, 2d Ed., § 153; 49 C. J. S., Judgments, § 230, p. 438; and 31 Am. Jur., Judgments, § 727, p. 272.

This court has often applied the foregoing principle. *Silliman v. Silliman*, 66 Or. 402, 133 P. 769, has been frequently cited. From it we quote:

"The original decree was made and entered on March 22, 1912. Another regular term of that court began on the first Monday in April, 1912, and the motion asking for the change in the decree was not entered until June 22, 1912, and the amended decree was not entered until July 18, 1912. Another regular term of that court began on the first Monday in July, 1912. It will be observed that the or-

iginal decree was made during the January term, and that the motion for a change in the decree was not made or filed at that term nor until after the April term had probably closed. The records show also that the original decree was, when entered, in all respects what the court intended it to be. This motion was not based on any error of the clerk in entering the decree or to make the decree to be entered to conform to the decree actually made by the court. The object of the motion was to have a new paragraph added to the decree, granting to the plaintiff one-third of the defendant's real property, which the court, when the original decree was entered, did not intend to grant. That the court did not intend to grant the plaintiff any interest in the defendant's land, when the original decree was rendered, is shown by the conclusions of law then filed and by a recital of the amended decree.

"The law is settled that a court may make changes in a judgment or a decree at any time during the term at which it was entered: 1 Black, Judgments, (2 Ed.), § 153. It is equally well settled that, after the expiration of the term of court at which a judgment or a decree was rendered, it is not within the power of the court to amend it in any matter of substance or by adding a new clause affecting the rights of the parties: 1 Black, Judgments, (2 Ed.), § 153; Grover v. Hawthorne, 62 Or. 69, 75 (116 Pac. 100, 121 Pac. 804); Farmers' Loan Co. v. Oregon Pac. R. R., 28 Or. 44 (40 Pac. 1089); Lombard v. Wade, 37 Or. 432 (61 Pac. 856); 23 Cyc., pp. 861, 862. But it is within the power of the court, after the adjournment of the term, to correct clerical errors or misprisions of the clerk in entering a judgment or a decree so as to make the judgment or the decree entered conform to the judgment or the decree actually rendered. Under this power to make corrections, however, the power of the court is limited to including in the reformed judgment or decree provisions that were included in the

judgment or decree actually rendered, but omitted from the entry by misprision of the clerk: 1 Black, Judgments, §§ 156, 157. Mr. Black, in Section 156, says: 'Hence, if anything has been omitted from the judgment which is necessarily or properly a part of it, and which was intended and understood to be a part of it, but failed to be incorporated in it through the negligence or inadvertence of the court or the clerk, then the ommission may be supplied by an amendment after the term. If, on the other hand, the proposed addition is a mere afterthought and formed no part of the judgment originally intended and pronounced, it cannot be brought in by way of amendment.'

"The amendment of the decree in this case, so as to grant the plaintiff part of the defendant's land, was an afterthought, and the court was without jurisdiction to allow it, after the adjournment of the term, * * * ."

*Zelig v. Blue Point Oyster Co.,* 61 Or. 535, 113 P. 852, 122 P. 757, states:

"The court having rendered a final judgment of February 26, 1910, its power to amend the same lapsed with the end of the February term except for mere clerical errors, but not for matters of substance, unless the court retained its jurisdiction over it for subsequent purposes by means of the filing of a motion for a new trial or some such means. Opportunity was given thus to keep the judgment within the breast of the court by filing exceptions to the findings and a motion to the court to render other findings, but this opportunity was allowed to lapse, and, so far as the record before us discloses, nothing was done at the February term that would retain the judgment in this case within the bosom of the court; hence the power of the court over that judgment ceased with the end of its February term. Deering v. Quivey, 26 Or. 556 (38 Pac. 710); Henrichsen v. Smith, 29 Or. 475,

(42 Pac. 486: 44 Pac. 496); Alexander v. Ling, 31 Or. 222, (50 Pac. 915).

"Therefore the orders of the court rendered at its March term in this action may be considered void, * * * ."

Other instances in which this court employed the foregoing principle of law are mentioned in the opinions from which we quoted and still others are cited in the texts to which we referred. We, however, mention the following: *Armstrong v. Vancil*, 169 Or. 320, 128 P. 2d 951; *Jackson v. United Railways Co.*, 145 Or. 546, 28 P. 2d 836; *Hicks v. Hill Aeronautical School*, 132 Or. 545, 286 P. 553; *Smith v. Rose*, 125 Or. 56, 242 P. 842, 265 P. 800; *Western Land & Irrigation Co. v. Humfeld*, 118 Or. 416, 247 P. 143; *First Christian Church v. Robb*, 69 Or. 283, 138 P. 856.

█ The principal of law of which we took notice lends stability and finality to the decrees and judgments of courts. Hereafter when we use the word "judgments" we will mean both judgments and decrees. The principle is based upon a conviction that there must be an end to every controversy. There would be no end to controversies if solemn judgments can be forever overhauled, amended or modified. The end of the term of court in which a judgment was entered is accepted by this rule as the end of opportunities to amend the judgment so far as afterthoughts undertake to go. It is apparent from the language we quoted that a court always has the power to relieve from clerical error and misprision. The quoted language also points out that a court may reserve to itself control over a judgment and that statutes may render judgments subject to revision. Sections 1-1007 and 9-915, O. C. L. A., as amended by Oregon Laws 1947,

Ch. 584, are legislation of the kind just mentioned. Neither of those sections is applicable to the issues before us. There is no contention that the court, upon entering the divorce decree, reserved control over it. The principle stated in the foregoing authorities holds that unless control over a judgment was reserved by judicial action or statutory provision, or unless the judgment fails to state faithfully the relief actually given, it becomes final at the close of the term of court. When the term in which it was pronounced has lapsed, the court no longer has power to modify or revise it.

It is apparent that the decree of December 14, 1944, which the challenged order of July 28, 1947, sought to modify, contained all of the provisions that the court intended should be in it. The decree was entered by the Honorable Fred W. Bronn, who was no longer upon the bench when the respondent sought an amendment of the decree. As we have seen, Judge Bronn, at the end of the divorce trial, requested the attorneys to prepare the decree and stated to them all of the provisions he wished included in it. His only reference to the home property was the following:

> "Possession of the home and property will be given to the plaintiff as long as she remains in the home and maintains a home for the youngest child."

The decree that was signed and entered conformed to the instructions given to the attorneys. It seems clear that Judge Bronn did not intend to award to the respondent any interest in the home property and, therefore, the order of July 28, 1947, can not be deemed an effort to correct his decree and make it grant the relief he intended to give, but that it must be deemed an addition to his decree of a new provision he never intended should be a part of it.

The challenged paragraph that the order of July 28, 1947, added to the decree must have been based upon an afterthought that came to the respondent. As we have seen, she said nothing during the divorce trial concerning the title to the home property; in fact, she did not mention that property except to acquiesce in a question that inquired whether she could support Jacqueline if permitted to remain in the home during her minority. Her affidavit of June 13, 1947, from which we quoted extensively, warrants the inference that after she made the belated discovery that she was not named in the deed as a grantee, she decided to seek a reformation of the divorce decree by having added to it a new provision. Without resort to further analysis, we express our conclusion that the decree needed no correction, for it granted all of the relief which the trial judge had in mind, and that the challenged order of July 28, 1947, seeks to incorporate in the decree an afterthought. The attacked order, in our opinion, is void and the order of October 24, 1947, is erroneous.

■ The order of July 28, 1947, being void, was final and appealable: *Salem King's Products Co. v. La Follette,* 100 Or. 11, 196 P. 416; *Silliman v. Silliman,* supra; *Trullenger v. Todd,* 5 Or. 36.

The orders of July 28, 1947, and October 24, 1947, are reversed. The cause is remanded with instructions to the Circuit Court to vacate as void the order of July 28, 1947. Costs and disbursements will be awarded to neither party.