Argued March 16, affirmed March 30, 1960

COLOMBO ET AL *v.* HEWITT ET AL
350 P. 2d 893

*Lewis Hoffman* argued the cause for appellants. On the briefs were Bailey, Hoffman & Spencer, Eugene.

*Wolf Von Otterstedt,* Eugene, argued the cause for respondents. On the brief were Husband & Johnson, Eugene.

Before McAllister, Chief Justice, and Perry, O'Connell and Harris, Justices.

HARRIS, J. (Pro Tempore)

The plaintiffs, Ernest E. Colombo and Ardelle J.

Colombo, husband and wife, and M. B. Marsh and Martha E. Marsh, husband and wife, in this suit allege that the defendants, Roy H. Hewitt and Susie A. Hewitt, husband and wife, and William A. Adams and Elizabeth O. Adams, husband and wife, about October 1, 1956, blocked and obstructed a portion of a public roadway known as Old County Road No. 227, or former 18th Street, near Eugene, Oregon. The parties hereto, as husbands and wives, are owners of certain real property, the location of which in relation to Old County Road No. 227 is shown and indicated on the diagram which is set forth for illustration purposes only. Old County Road No. 227 involved in this litigation is indicated on this diagram by the dotted lines.

The plaintiffs allege in their complaint that such obstruction has permanently denied them the use of said roadway unless the court grants them injunctive relief. From a decree in favor of the plaintiffs granting them such relief, the defendants have appealed.

The principal question for determination is whether a portion of said Old County Road No. 227, which, prior to 1927, was designated as (old) 18th Street and was maintained by Lane county as County Road No. 227, was ever vacated. The court found that the portion of this county road (former 18th Street) involved in this suit has been and now is a public roadway, and that it has never been vacated.

For nearly 75 years prior to 1927 former County Road No. 227 (hereinafter referred to as Old No. 227) ran on the section line between the Hewitt and Colombo tracts as they are shown on the diagram. This road was used by the public generally as a western entry to the city of Eugene until about 1927. In about 1927 Lane county began construction of an arc which cir-

cumvented a portion of Old No. 227, located on a fairly steep hill. Present County Road No. 227 is now also known as 18th Street as shown on the diagram.

The main question involved in the suit is whether at any time between the construction of the new portion of County Road 227 (18th Street on the diagram) any action occurred which legally vacated Old No. 227, so that the right of way on each side of the section line would revert under law to the property owners on the respective sides of the road.

ORS 368.405 provides the proceedings to establish or alter roads as follows:

"(1) Proceedings for the laying out, opening, establishment, alteration, straightening, location and relocating of county roads shall be instituted in the following ways:

"(a) By petition of free holders.

"(b) By resolution of the county court.

"(c) By grant of owners of necessary rights of way.

"(d) By condemnation proceedings.

"(2) This section does not preclude acquiring public ways by adverse user."

There is no contention advanced by defendants that either petition by freeholder method (ORS 368.430–368.465), the resolution method (ORS 368.470) or the condemnation method was used to procure a vacation of Old No. 227. Defendants contend there was a vacation of the portion of Old No. 227 under consideration by grant of the owners of necessary rights of way.

ORS 368.540, on which defendants rely, provides:

"Whenever any proceeding is instituted in any county court, by petition, resolution or otherwise as provided by law, having for its object the relocation or alteration of any existing county road or highway within the county, the proceedings are carried to a conclusion and a final order entered establishing a new road following the general alignment of the old road, the final order shall vacate all

parts of the old road or highway not included within the limits of the new road, without any other proceedings, but the county court may expressly provide that any portion of the old road shall not be vacated. Whenever the whole or any part of a road so vacated shall be supplied by another, the same shall not be shut up or obstructed until the road laid out to supply the place thereof is actually opened to travel."

It appears that on February 15, 1927, deeds were filed in the office of the county clerk providing for a right of way, for a change of location of County Road 227, and that during 1927 the county court constructed a public road along said right of way. However, the record does not disclose that there was in the 1927 proceedings "a final order entered establishing a new road following the general alignment of the old road" as provided in ORS 368.540, or any order whatsoever. It is a "final order" which "shall vacate all parts of the old road or highway."

It will be noted that ORS 368.540, upon which defendants rely, provides for two types of final order with reference to vacation of an old road. The first type we have already mentioned in the preceding paragraph. The other type of order that is authorized is that "the County Court may expressly provide that a portion of the old road shall not be vacated." There is no showing that either type of order, or any order, was made in 1927.

Lacking proof of what action, if any, the county court took in 1927, defendants rely on an order entered by the county court 21 years later, in May, 1948, which reads:

"IN THE COUNTY COURT FOR LANE COUNTY, STATE OF OREGON.
"In the Matter of a Vacation of a

Portion of County Road No. 227, on or near the South line of Sec. 35, T17S, R4W, W.M., Lane County, Oregon

## "ORDER #2080

"Whereas, on February 15, 1927, good and sufficient deeds were filed in the office of the County Clerk of Lane County by Bernice A. McCornack and husband E. A. McCornack and by Ella C. McCornack, unmarried, providing a right-of-way 40 feet in width for a change in the location of County Road No. 227, through Lots 7, 8 & 9 of City View Park, and

"During 1927 the County Court of Lane County constructed a public road over and along said right-of-way as a part of County Road No. 227, and

"Whereas Section 100-1222 O.C.L.A. provides that in case of the relocation of a county road, all portions of the right-of-way not included in the right-of-way of the relocated road should be and are automatically vacated,

"Therefore, it is hereby declared by the County Court of Lane County that it was the intent of the County Court that all portions of the right-of-way of County Road No. 227 along the South Line of the east half of Section 35, Township 17 South, Range 4 West, W.M., in Lots, 7, 8 & 9 should be and they are hereby declared to be vacated in accord.

"Dated at Eugene, Oregon, this 6th day of May, 1948.

"COUNTY COURT for LANE COUNTY.
Clinton Hurd, County Judge
W. J. Holland, County Commissioner
Allen P. Wheeler, County Commissioner."

It will be noted that by this order the court in 1948 is not acting on its own proceeding for altering a high-

way, but is attempting to speculate on what a county court did or intended to do some 21 years before and enter an order nunc pro tunc relative thereto. This is shown on the face of the order. The order then attempts to vacate the roadway in question "in accord" with that which the court attempts to hold a former court intended to do some 21 years before. Suppose the county court in its 1948 order had made an order that it was the intention of the 1927 county court that "any portion of the old road shall not be vacated," one of the alternatives mentioned in the section under consideration. Would it be contended that such order had validity? .

Defendants urge that the order of the county court of May 6, 1948, was a judgment of a competent court which is not subject to collateral attack. 49 CJS 805, Judgments § 408. Defendants claim plaintiffs' remedy was by appeal or writ of review from the 1948 order.

■ With reference to the claim of collateral attack, it is clear that when a county court acts in the transaction of county business such as the laying out of county roads, such court is an inferior tribunal of special and limited jurisdiction. *Stadelman v. Miner,* 83 Or 348, 392, 155 P 708, 163 P 585, 163 P 983, and cases therein cited; *State v. Officer,* 4 Or 180, 183; *Tustin v. Gaunt,* 4 Or 305, 307-310. Therefore, all the facts to show and confer jurisdiction and to demonstrate its lawful exercise must appear on the face of the record of its proceedings. If these facts do not so appear, the proceedings of such an inferior tribunal when brought into question collaterally, are mere nullities. The distinction between a court of general jurisdiction and one of limited and special jurisdiction is pointed out in *Tustin v. Gaunt,* supra, at p 309:

" 'A Court which is competent, by its constitu-

tion, to decide on its own jurisdiction, and to exercise it to a final judgment, without setting forth in their proceedings the facts and evidence on which it is rendered, whose record is absolute verity, not to be impugned by averment, or proof to the contrary, is of the first description; there can be no judicial inspection behind the judgment save by appellate power. A Court which is so constituted that its judgment can be looked through for the facts and evidence which are necessary to sustain it, whose decision is not evidence of itself to show jurisdiction and its lawful exercise, is of the latter description; every requisite for either must appear on the face of their proceedings, or they are nullities.' (2 How. U.S. 341)."

Because of these reasons the order of the county court made in 1948 does not import verity. Its "proceedings are nullities if its jurisdiction and the lawful exercise thereof do not appear on the face of the record."

■ It will be noted that the order of the county court in 1948 states that "It is hereby declared by the County Court of Lane County that it *was* the intention of the County Court that all portions of the right-of-way * * * should be and they are hereby declared to be vacated in accord." (Emphasis supplied.)

It appears, therefore, that the county court in 1948 attempted to put its appraisal upon the action of a former court and attempted to hold that it was indicated to the satisfaction of the 1948 court that certain action had been taken by the 1927 court, all without any showing that any order whatsoever was made in the 1927 proceedings. In *State v. Officer*, supra, at page 184, the county court in its record stated: "Proof of posting notices having been made to the *satisfaction* of the Court." This court held as follows:

" 'The presumptions of law are in favor of the

jurisdiction and of the regularity of the proceedings of Superior Courts, or Courts of general jurisdiction * * * * but that *they are not in favor of the jurisdiction and regularity of the proceedings of inferior Courts,* or Courts of limited jurisdiction; and *parties who claim any right or benefit under their judgments must show their jurisdiction affirmatively.* [Emphasis supplied.]

"The record in the case of *Thompson v. Multnomah County* differs from that in the case under consideration in this respect only: In the former it appears that no reference was made whatever to the proof of the posting of notices, while in the latter the language of the record is, 'Proof of posting notices having been made to the *satisfaction* of the Court,' etc. Does this language disclose the necessary jurisdictional facts to warrant the Court in proceeding, is the question. The County Court in its proceedings by the location of public highways to condemn the lands of private persons to public use, is only required to cause constructive notice to be given by the petitioners of their application for that purpose. This notice is to be given by posting the same at the *time,* at the *places,* and in the *manner* prescribed by law; and the language of the record should show affirmatively that this law had been strictly complied with.

"We do not think that it is sufficient to say that the proof of the posting of notices was made to the *satisfaction* of the Court. That proof which might satisfy the Court might not satisfy the law. That proof which might satisfy the Court might not justly and lawfully satisfy the persons whose private property is sought to be condemned to public use. If it is sufficient to say that the Court is *satisfied* with the proof of the posting of notices, without any *showing* as to the time, place or manner of posting, then the only question upon this subject would be one in the discretion of the Court, which, when once exercised, would be a finality, however

erroneous the judgment of the Court might have been."

■ Also, we hold that ORS 368.540, upon which defendants rely, for "automatic" vacation contemplates that the final order shall be made in the proceeding "instituted" and "carried to a conclusion" at the time the alteration of the highway is made, and that the matter of a final order establishing a new road cannot be made as a result of such proceeding 21 years later. ORS 203.170 provides:

> "There shall be a term of the county court for the transaction of county business held in the several counties having county courts on the first Wednesday in each month, convening at 10 a. m., and at such other times as the court in term or the county judge in vacation may appoint, in like manner and with like effect as the circuit court or judge thereof is authorized by ORS 44.410."

An Oregon case dealing directly with the necessity of a county court to act within a proper term and holding that at a later term such court cannot, by order nunc pro tunc, correct the court's failure to act or its incorrect action at a previous term is *Tompkins v. Clackamas County,* 11 Or 364, 366-367, in which the court states:

> "Besides, the record shows that on the 9th day of September, 1881, the judge, and not the court acting as a board of commissioners, appointed a term of court to be held on the 17th day of October. It does not appear that the commissioners were present, or that they concurred in such appointment, and in fact it does not appear from the record that the *court* appointed a term to be held on October 17th. It is well settled that a court of inferior jurisdiction must show by its record its authority to act in the particular case, or as it is

somewhere expressed the facts conferring jurisdiction and the power to act in the given case must affirmatively appear upon the face of its record. Now, when it is considered that it is an inferior court proposing through the device of a mere technicality to appropriate the land of a private citizen for a public road, without compensation and *in invitum,* every consideration of public justice and constitutional right requires that the power or jurisdiction of the court in the premises should be without objection. Certainly, if the property of the individual is to be taken without compensation by a mere technicality, the record of the proceeding of the court by which it is done should be beyond the reach of a similar objection. Now, when the defendant appeared at the regular term of the court in January, 1882, and filed his petition for damages, it was found that the record did not disclose that the special term of which he had no notice, had not been appointed regularly, and to cure that defect and cut off his claim for damages, at the next regular term in April, a *nunc pro tunc* order was made to cure the defect of the order of September 9, 1881. Can the defendant's rights be taken away in that manner? If it can, then an order of no force and which is impliedly admitted, may be amended by a *nunc pro tunc* order so as to be held that notice was given, and thus violate the constitutional rights of the citizen by condemning his property without a hearing and without compensation. We do not think that a *nunc pro tunc* order will be made except in furtherance of justice. Mr. Freeman on Judgments says: 'The failure of a court to act or its incorrect action can never authorize a *nunc pro tunc* entry, if no judgment be rendered, or if an imperfect or improper one be rendered, the court has no power to remedy any of their errors by treating them as clerical mistakes.' Such an order applies only to correct a record between parties, not to correct or change an order of the court, in relation to its own proceedings by which

injustice will result by depriving a party of his property without compensation or a hearing.

"The judgment is reversed."

We believe the Tompkins case is determinative of the within cause.

Indicative of the limited control of an inferior court of limited jurisdiction over its own judgments is the following language taken from *Mitchell v. Or., Wn., Credit & Coll. Bur.,* 188 Or 389, 393, 215 P2d 917:

> "The authority to vacate or set aside its own judgments is inherently incident to all courts of record or of general jurisdiction and may be exercised without the grant of any special statutory authority. *Jackson v. United Railways Co.,* 145 Or. 546, 28 P. (2d) 836; 15 R.C.L., Judgments, § 140, p. 688. It is generally held that courts of special or limited jurisdiction have no such powers in the absence of statutes expressly granting them. 49 C.J.S., Judgments, § 265, p. 478; 31 Am. Jur., Judgments, § 716, p. 266; 15 R.C.L. Judgments, § 140, p. 689; Annotation, 60 Am. St. Rep. 633; *Pass v. State,* 83 Ind. App. 598, 147 N.E. 287; *In re Cudahy's Estate,* 196 Wis. 260, 219 N.W. 203. See also *Clubine v. City of Merrill,* 83 Or. 87, 163 P. 85."

It may also be added that even a court of general jurisdiction is governed by the following rule set forth in *Bogh v. Bogh,* 185 Or 93, 107, 202 P 503.

> "* * * The principle stated in the foregoing authorities holds that unless control over a judgment was reserved by judicial action or statutory provision, or unless the judgment fails to state faithfully the relief actually given, it becomes final at the close of the term of court. When the term in which it was pronounced has lapsed, the court no longer has power to modify or revise it."

It will be noted, also, that it is the order that should have been made in the 1927 proceeding (upon which the record is silent) which, had it established "a new road following the general alignment of the old road shall vacate (by its own force) all parts of the old road not included within the limits of the new road without further proceedings." The only provision is for a certain order which shall ipso facto result in the vacation of the old road. There is no provision in the law for such an order as attempted to be made in 1948.

"The rule implies that some official action must usually be shown. Clearly the mere evidence that at a certain time the highway was changed to a new position, leaving an old part open but not publicly cared for, is not enough to show an abandonment of the old part." 158 ALR 545.

It may well be the reason the county court did not duly and regularly enter a final order in 1927 which would automatically have vacated Old No. 227 was its knowledge that such action would leave the abutting land owners along the old road without any means of access and that, therefore, such action would subject the county to liability under the following rule:

"(a) A total deprivation of all access to a piece of property is a 'taking' within the meaning of the Oregon Constitution for which compensation must be paid.

"(b) Where some means of ingress and egress remains, although not the most convenient one, access to a particular street or highway may be regulated or prohibited without liability to the abutting owner for compensation, so long as the regulation or prohibition is to promote the public use of the highway for highway purposes. Here the injury suffered by the abutting owner is consequential to a lawful use of the highway, and is *damnum absque injuria*. No distinction should be made between a

tangible one (control of access), as long as some other means of access is available, the improvement is lawful, the improvement does not physically encroach upon the abutting property, and the improvement is for highway purposes." 33 Oregon Law Rev 34.

We hold that the attempt to vacate the old road by another county court in 1948 based upon what it conceived the county court intended to do in 1927 is of no legal effect. We do not pass upon the right of the Lane county court to vacate Old No. 227 under other proceedings provided by law.

Because of the foregoing reasons, we hold that the 1948 order, insofar as it attempted to vacate the road under consideration, was a nullity.

Assuming, arguendo, that contrary to our conclusions the 1948 order had any validity, the question arises whether in this case such an order established "a new road following the general alignment of the old road."

A guide in interpreting what is meant by the term "following the general alignment of the old road" is found in the last sentence of this section (ORS 368.540) which reads:

"* * * Whenever the whole or any part of a road *so vacated shall be supplied by another,* the same shall not be shut up or obstructed until the *road laid out to supply the place thereof* is actually opened to travel." (Emphasis supplied.)

In other words, the vacated road shall not be "shut up * * * until the [new] road laid out *to supply the place thereof* is actually opened to travel." (Emphasis supplied.) This is indicative of legislative intent that the new road would take the place of the old road.

Instead of "supplying the place thereof" the diagram shown earlier demonstrates that if the "order" establishing the new road automatically vacated the old road, the property of plaintiffs became landlocked and without any means of egress and ingress (The other access roads shown on the diagram were not in existence). In fact, the evidence discloses the old road was used until 1956, when it was blocked by defendants. Defendants have cited no authority that a superseding road which leaves property owners landlocked shall be considered a highway which supplies the place of the old road.

In *Small v. Binford,* 41 Ind App 440, 83 NE 507, the court held:

> "* * * The building of the new turnpike cannot be said to have worked an abandonment of the old road, for the former is a new and separate highway. Such an abandonment would leave the landowners without a way to get to or from their property."

In *Vedder v. Marion County,* 28 Or 77, 91, 36 P 535, 41 P 3, this court stated:

> "* * * The road to be vacated constitutes a part of what is known as the Shuck's Mill and Woodburn Road, the base of the triangle serving as a part of the Shuck's Mill and Gervais Road. The new way increases the distance to Shuck's Mill from Woodburn almost nineteen chains. Under these conditions it cannot be said that the new supersedes the old and renders it unnecessary. The respective lengths of the two roads are so great and their divergence so marked as to dispel the idea that the one is to supersede the other, or that the location of the one will render the other unnecessary."

Also in this regard see the following cases: *Rector v. Christy,* 114 Iowa 471, 87 NW 489; *Lilly v. Bowling,* 120 W Va 169, 197 SE 299.

■ We interpret ORS 368.540 to mean that the "old road" therein mentioned is vacated by a final order only when the new, replacing highway leaves reasonably adequate means of ingress and egress to the owners of property abutting on the road to be vacated. This ruling is in harmony with the expressed intention of a companion section of the code which provides: "*   *   * that no road or portion thereof shall be vacated under this section if vacation would deprive the owner of any real property of access to such property by public road or other right of way." ORS 368.620.

We also find that the record supports the finding of the trial court, in which we concur, that the semicircular or curved roadway shown in the diagram connecting Old County Road 227 to the relocated road 227 has by public user, for the requisite time, become a public road and that its use is vested in the public. The decree appealed from is affirmed. No costs and disbursements will be allowed.